UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| CHRISTOPHER REGAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:16 CV 98 |
| | ) | |
| CITY OF HAMMOND, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION and ORDER

This matter is before the court on the cross motions for summary judgment filed by plaintiffs Christopher Regan and Northwest Indiana Creative Investors Association, Inc. ("NICIA") and defendant City of Hammond, Indiana. For the reasons identified below, plaintiffs' motion (DE # 39) will be denied and defendant's motion (DE # 46) will be granted.

I.      BACKGROUND

Plaintiff Christopher Regan owns and leases real property in the City of Hammond. (DE # 1 at 1.) Regan lives in Cook County, Illinois. (*Id.*) Plaintiff NICIA is a non-profit corporation acting as a trade association for real estate investors who lease real property in Hammond. (*Id.* at 2.) In their complaint, plaintiffs allege that sections of Hammond's municipal code are unconstitutional because the Code requires Hammond property owners who do not reside in their property to obtain licenses, or hire licensed contractors, to complete home repairs, but the Code exempts homeowners who live in their Hammond homes from this requirement.

The Hammond municipal code requires persons engaged in "the business of a building contractor" in Hammond to be licensed. Hammond Municipal Code § 150.017. However, the Code specifically exempts resident homeowners from the licensing requirement:

> (B) Nothing contained in this subchapter shall prohibit the resident homeowner of a private residence from doing building contracting in his or her own private home and surrounding property, providing he or she resides there, is able to establish proof of residency, and is in compliance with all requirement tests and regulations provided by law and this code. Falsification or misidentification of residency is a violation of this section and is subject to penalty as set forth in § 150.999. A resident homeowner excluded under this section acts as his or her own contractor and assumes all responsibility for work done. All work must be done in a workmanship manner and there must be compliance with all codes and laws. If the owner of the property chooses to hire a contractor, such contractor must be licensed in the city.

Hammond Municipal Code § 150.017. The Code definition of "Building Contractor" for purposes of Section 150.017, includes "[a]ny person or persons who own a building that they lease or rent;" but excludes "[i]ndividuals who remodel the single family residence in which they reside; upon review and inspection(s) by the Building Commissioner." Hammond Municipal Code § 150.015.

Plaintiffs allege that these sections of the Code violate the dormant Commerce Clause by imposing an "improper, unreasonable burden on interstate commerce by charging higher fees to non-city owners of Hammond property than to Hammond-domiciled owners of property." (DE # 40 at 1.) Plaintiffs also claim that the Code provisions run afoul of the Equal Protection Clause of the Fourteenth Amendment

2

because the provisions are not related to any legitimate government interest. (*Id.*)[1]

Defendant, on the other hand, contends that the ordinance provisions have no effect on interstate commerce because the provisions treat all similarly situated persons the same, regardless of their location. (DE # 46 at 1.) Defendant claims that the City's regulation of for-profit building contractors and landlords, but not resident homeowners repairing their single-family homes, is rationally related to legitimate governmental interests. (*Id.* at 1-2.) Thus, the City argues, the ordinances survive review under both the dormant Commerce Clause and the Equal Protection Clause. (*Id.*)

Both parties have moved for summary judgment. This matter is fully briefed and is now ripe for resolution.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson*

---

[1] Plaintiffs also make a cursory argument that the ordinances violate the Privileges and Immunities Clause. However, the court declines to consider this argument as part of their motion for summary judgment. This argument was relegated to a footnote, and thus was not properly presented. *See Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, - - F.3d - -, 2018 WL 3188308, at *6 (7th Cir. 2018); *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017); *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013).

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

### III. ANALYSIS

#### A. Dormant Commerce Clause

"The Commerce Clause grants Congress the power to 'regulate Commerce . . . among the several States,' but the Supreme Court has long held that a 'dormant' or 'negative' component of the Clause implicitly limits the states from 'erecting barriers to the free flow of interstate commerce' even where Congress hasn't acted." *Park Pet Shop,*

*Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017) (internal citations omitted). Modern Commerce Clause precedents "rest upon two primary principles that mark the boundaries of a State's authority to regulate interstate commerce. First, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce." *S. Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2090-91 (2018).

A state or local law may fall into one of three categories, for purposes of a dormant Commerce Clause analysis: (1) disparate treatment; (2) disparate impact; and (3) "laws 'that do not give local firms any competitive advantage over those located elsewhere.'" *Park Pet Shop*, 872 F.3d at 502 (quoting *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131 (7th Cir. 1995)). In the first category are laws that explicitly discriminate against interstate commerce. These laws are treated as "presumptively unconstitutional," *Id*. at 501, and are subject to strict scrutiny review. *Legato Vapors, LLC v. Cook*, 847 F.3d 825, 830 (7th Cir. 2017).

In the second category are laws that are neutral on its face, but have a discriminatory effect in practice. If the law bears so heavily on interstate commerce that it acts as an "embargo on interstate commerce without hindering intrastate sales," the law is treated as if it were facially discriminatory. *Park Pet Shop*, 872 F.3d at 502. If, however, the law has only a "mild disparate effect and potential neutral justifications," the law is analyzed under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), which "established a balancing test that requires the reviewing court to weigh the burden on

5

interstate commerce against the nature and strength of the state or local interest at stake." *Id.* If the law "regulates even-handedly to further a legitimate local public interest, and the effect on interstate commerce is merely incidental, the law will be upheld unless the burden on commerce is "clearly excessive in relation to the putative local benefits." *Id.*

Finally, the third category consists of laws that may effect commerce but do not burden it, and do not give local entities any competitive advantage over entities located elsewhere. *Id.* Laws in this category receive rational-basis review. *Id.* As the Seventh Circuit stated: "'No disparate treatment, no disparate impact, no problem under the dormant commerce clause.'" *Id.* (quoting *Nat'l Paint*, 45 F.3d at 1132).

    1.    <u>The Hammond Ordinances Do Not Receive Strict Scrutiny Review</u>

        *i.*    *The Hammond Ordinances are Not Facially Discriminatory*

Plaintiffs insist that the Hammond ordinances fall into the first category of facially discriminatory laws that must withstand strict scrutiny review. They argue that the laws "expressly discriminate[] in favor of city homeowner residents over city homeowner non-residents." (DE # 40 at 17.) Plaintiffs repeatedly suggest that the ordinances discriminate against non-resident homeowners in Hammond. This is incorrect.

The ordinances do not discriminate between Hammond residents and non-Hammond residents. While the effect of the ordinances is to distinguish (by way of exemption) between resident and non-resident homeowners, a non-resident

6

homeowner is a person who does not live in the home in question – not, as plaintiffs suggest, a person who is not a resident of Hammond. Under the ordinances, building contractors, general contractors, real estate developers, and landlords would all be considered "non-residents." The ordinances treat all of these property owners the same, regardless of whether they reside in Hammond. A Hammond resident who owns and leases a second home in Hammond would be required to obtain a license for certain repairs on the second property, as would a Chicago resident who owns and leases property in Hammond. Thus, the ordinances do not facially discriminate against out-of-state residents.

      ii.  *The Ordinances Do Not Discriminate Against Similarly Situated Persons*

Plaintiffs argue that the ordinances "discriminatorily burden[] them over similarly situated (*e.g.*, property-owning) Hammond residents." (DE # 40 at 5.) The Supreme Court has held, "any notion of discrimination assumes a comparison of substantially similar entities. . . . [However,] when the allegedly competing entities provide different products . . . there is a threshold question whether the companies are indeed similarly situated for constitutional purposes." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298–99 (1997). Where the entities in question are not similarly situated because they serve different markets, and would continue to serve different markets even if the allegedly discriminatory regulation was removed, there is no competition between favored and disfavored entities and thus there is no local preference or undue burden that could violate the dormant Commerce Clause. *Id.* at 300. The "Commerce Clause

7

protects markets and participants in markets" and if "competition would not be served by eliminating any tax differential as between sellers … the dormant Commerce Clause has no job to do." *Id.* at 300, 303.

Here, the ordinances do not discriminate against similarly situated persons. Landlords, real estate developers, and general contractors developing or improving land as part of for-profit business operations are not similarly situated to resident homeowners making improvements to their own single-family homes. While resident homeowners will bear the risk of their own poor craftsmanship, building contractors and landlords impose the risk of faulty construction upon current or future tenants. Moreover, these classes of persons are not in competition with one another. If the resident homeowner exemption was removed, and all property owners were required to obtain licenses, plaintiffs would be unaffected. The resident homeowner exemption has no negative effect on competition (interstate or otherwise) and therefore "the dormant Commerce Clause has no job to do." *Id.*

     iii.  *Plaintiffs Rely on Inapplicable Authority*

Plaintiffs rely on several Supreme Court decisions in support of their position that the Hammond ordinances have a discriminatory effect against interstate commerce, and thus must be reviewed under a strict scrutiny analysis. Plaintiffs claim that these cases support their position that the Hammond ordinances amount to impermissible economic protectionism. (DE # 40 at 20.) These cases, however, do just the opposite.

First, plaintiffs rely on *Dean Milk Co. v. City of Madison, Wis.*, 340 U.S. 349 (1951),

8

in which the Supreme Court considered an ordinance that required milk sold as 'pasteurized' in Madison, Wisconsin, be processed and bottled at an approved pasteurization plant within a five-mile radius of the central square in Madison. *Id.* at 350. The Supreme Court held that the practical effect of the ordinance was to exclude milk pasteurized in Illinois from distribution in Madison, in violation of the dormant Commerce Clause. *Id.* at 354. "In thus erecting an economic barrier protecting a major local industry against competition from without the State, Madison plainly discriminates against interstate commerce." *Id.*

A similar law was considered in *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res.*, 504 U.S. 353 (1992). There, a Michigan law prohibited private landfill operators from accepting solid waste that originated outside the county where their facility was located. *Id.* at 355. The Court held that the effect of the law was to "authorize[] each of the State's 83 counties to isolate itself from the national economy." *Id.* at 361. Therefore, while the law purported to regulate waste from other Michigan counties in the same way it regulated waste from out-of-state providers, the practical effect of the law was to prohibit all interstate commerce. *Id.* at 362-63. Thus, the law violated the dormant Commerce Clause. *Id.*

Finally, plaintiffs rely on *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 386 (1994), in which the Supreme Court considered an ordinance that required all solid waste to be processed at a designated transfer station within the town before leaving the town. The Court found that the ordinance violated the dormant Commerce

9

Clause because the effect of the law was to deprive competitors, including out-of-state competitors, of access to the local market. *Id.* at 389. "The flow control ordinance at issue here squelches competition in the waste-processing service altogether, leaving no room for investment from outside." *Id.* at 392. "The essential vice in laws of this sort is that they bar the import of the processing service," and thus "hoard a local resource . . . for the benefit of local businesses that treat it." *Id.*

None of these cases are factually similar to the case at bar. The common thread in each of these cases is that the state or local government (1) barred out-of-state access to the local market, (2) for the benefit of a local interest. Thus, the law violated the dormant Commerce Clause because the law favored a local interest to the exclusion of all other interests, including out-of-state interests. That is not the effect of the Hammond ordinances. Here, the ordinances do not regulate based on location, do not favor a local interest at the expense of outside interests, and do not impede competition or access to the local market. That resident homeowners are not also required to obtain a license is immaterial; their exemption has no effect on competition in the relevant marketplace.

Notably, in each of these cases the Supreme Court identified alternative regulations that would not have run afoul of the dormant Commerce Clause. In *Dean Milk Co.*, the Supreme Court noted that the city could have required an inspection procedure for all out-of-state milk that entered the city, or could have required that all milk sold in the city meet certain safety standards. 340 U.S. at 354–56. In *Fort Gratiot*, the

10

Supreme Court noted that the state could have placed an overall limit on the amount of waste each facility could process – rather than a limit based on the source/location of the waste. 504 U.S. at 367. Finally, in *C & A Carbone, Inc.*, the Supreme Court noted that the town "has any number of nondiscriminatory alternatives for addressing the health and environmental problems alleged to justify the ordinance in question. The most obvious would be uniform safety regulations enacted without the object to discriminate." 511 U.S. at 393. These proposed alternatives are much more akin to the type of regulation imposed in the Hammond ordinances. The Hammond ordinances, like those proposed as alternatives by the Supreme Court, impose a blanket regulation without regard to location. Thus, the ordinances do not have the effect of discriminating against interstate commerce.

Conversely, courts have consistently found that when the burden of a regulation is borne equally by both in-state and out-of-state interests, the dormant Commerce Clause is not implicated. For example, in *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 126 (1978), the Supreme Court held that a Maryland law that uniformly prohibited producers and refiners of petroleum from operating retail service stations within the state did not violate the dormant Commerce Clause because it did not create any barrier against interstate interests. *Id.* The Court emphasized three factors in determining that the statute did not burden or discriminate against interstate commerce: "it does not prohibit the flow of interstate goods, place added costs upon them, or distinguish between in-state and out-of-state companies in the retail market. The absence of any of

these factors fully distinguishes this case from those in which a State has been found to have discriminated against interstate commerce." *Id. See also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69 (1987) (Indiana law did not violate the dormant Commerce Clause where it regulated, but did not prohibit, any entity – in-state or out-of-state – from access to the regulated market); *Park Pet Shop*, 872 F.3d at 502 (Chicago ordinance was not discriminatory because it "evenhandedly prohibits *all* large commercial breeders – whether located in Illinois or out of state – from selling dogs, cats, and rabbits to Chicago pet stores." (emphasis in original)); *Nat'l Paint*, 45 F.3d at 1132 (ordinance that banned the sale of spray paint within the City of Chicago, without regard to source of spray paint, did not violate the dormant Commerce Clause).

The Hammond ordinances neither facially discriminate against out-of-state interests, nor have the practical effect of acting as an "embargo on interstate commerce without hindering intrastate sales." *Park Pet Shop*, 872 F.3d at 502. Therefore, the ordinances are not subject to strict scrutiny review.

2. <u>The Hammond Ordinances Are Not Reviewed Under The *Pike* Balancing Test</u>

The *Pike* analysis does not apply in this case because the Hammond ordinances do not have a discriminatory effect. The Seventh Circuit has emphasized that the *Pike* balancing test is not to be used as the default standard of review in dormant Commerce Clause cases. "*Pike* balancing is triggered *only* when the challenged law *discriminates* against interstate commerce in practical application. *Pike* is not the default standard of review for any state or local law that affects interstate commerce." *Park Pet Shop*, 872

F.3d at 502 (emphasis in original). "[U]nless the challenged law discriminates against interstate commerce in practical effect, the dormant Commerce Clause does not come into play and *Pike* balancing does not apply." *Id.* at 502; *see also Nat'l Paint*, 45 F.3d at 1130 (rejecting a default application of *Pike*, and holding "the dormant commerce clause does not replace the rational-basis inquiry with a 'broader, all-weather, be-reasonable vision of the Constitution.'").

Here, the Hammond ordinances do not discriminate or burden interstate commerce in practical effect, and thus *Pike* does not apply. As discussed above, the ordinances apply to all Hammond property owners who do not currently reside in their property. Plaintiffs have not identified any effect the ordinances have on out-of-state interests that is not equally felt by similarly situated in-state interests. *See Park Pet Shop*, 872 F.3d at 502 (city ban on selling pets from large breeders did not require application of *Pike* balancing; "All [large] breeders are similarly disadvantaged.")

One need only read *Pike* to see how distinguishable it is from the present case. In *Pike*, an Arizona law required all cantaloupes sold in Arizona to be packaged in Arizona. *Pike*, 397 U.S. at 138. While neutral on its face, the law imposed a severe disparate impact on the plaintiff out-of-state grower because the law would require the plaintiff to build a packaging plant in Arizona. *Id.* at 145. The Supreme Court found that the state's interest in the law, to enhance its own reputation by taking claim to a superior product, could not justify the practical discriminatory burden the law imposed on the plaintiff. *Id.* Conversely, in the present case, there is no disparate effect on out-of-

13

state landlords or contractors because they are subject to the same licensing requirements imposed on Hammond landlords and contractors.

The Hammond ordinances have no discriminatory effect on out-of-state interests, and therefore the *Pike* balancing test does not apply.

### 3. The Hammond Ordinances Receive Rational Basis Review

The Hammond ordinances fall into the third category of cases that neither burden nor discriminate against interstate commerce. Therefore, the ordinances receive rational basis review.

The Seventh Circuit's analysis in *Park Pet Shop*, demonstrates why plaintiffs' primary argument, that rational basis review is inappropriate because the resident homeowner exemption impermissibly favor local interests, misses the mark. 872 F.3d 495. In *Park Pet Shop*, the City of Chicago passed an ordinance limiting the source from which pet shops could obtain certain animals for resale. *Id.* at 497. Under the ordinance, retail pet shops could only sell dogs, cats, and rabbits obtained from animal control centers, pounds, government kennels, or non-profit animal rescues. *Id.* The definition of "pet shop" in the ordinance excluded small breeders. *Id.* at 499. Thus, the effect of the ordinance was to prohibit large commercial breeders from supplying these animals to pet retailers in Chicago. *Id.*

The Seventh Circuit held that the ordinance did not discriminate against interstate commerce, and thus applied rational basis review. *Id.* at 503-04. The Court found that the ordinance did not give local firms any competitive advantage over those

14

located elsewhere: "All [large] breeders are similarly disadvantaged." *Id.* at 502. This was true even though the ordinance might have the practical effect of favoring small breeders, who are exempt from the ordinance. *Id.* at 503. The Court emphasized that favoritism, if made without regard to location, does not pose a constitutional problem. *Id.* Because the ordinance "affects large breeders – wherever they're located – in exactly the same way," the ordinance did not violate the dormant Commerce Clause. *Id.*

Here, as in *Park Pet Shop*, the appropriate standard of review is rational basis review. As in *Park Pet Shop*, the Hammond ordinances impose a blanket regulation. All property owners that do not reside in their homes are "similarly disadvantaged." The fact that the ordinances favor homeowners residing in their homes does not pose a dormant Commerce Clause problem. The ordinances do not regulate based on location, do not favor local interests over out-of-state interests, and do not burden or discriminate against interstate commerce. Thus, rational basis review is the appropriate standard of review.

    4.  <u>The Hammond Ordinances Survive Rational Basis Review</u>

"Under rational-basis review, a statutory classification comes to court bearing 'a strong presumption of validity,' and the challenger must 'negative every conceivable basis which might support it.'" *Indiana Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015). "This is a heavy legal lift for the challengers." *Id.* "To uphold a legislative choice, we need only find a 'reasonably conceivable state of facts that could provide a rational basis' for the classification." *Goodpaster v. City of*

15

*Indianapolis*, 736 F.3d 1060, 1072 (7th Cir.2013) (internal citation omitted).

The City identified several reasons for the ordinance in its answers to plaintiffs' interrogatories:

> There are a number of reasons to treat resident homeowners differently from landlords, building contractors, or other persons who profit from building homes, home remodels or other contracting work. These include, but are not limited to:
>
> 1. General public safety by ensuring contractors are qualified to do the work and are aware of safety regulations;
>
> 2. General public safety and consumer protection by ensuring contractors are of good character, insured and bonded;
>
> 3. Protecting residential homeowners from the burden of obtaining a license for work on one's own home;
>
> 4. The assumption of risk an individual homeowner takes upon himself when conducting work by him or herself; and,
>
> 5. The general benefit of regulating contractors who do work for and profit from others.

(DE # 39-5). These justifications certainly survive rational basis review. The primary objective of the ordinances – to regulate building contractors to insure public safety – is plainly a legitimate governmental interest. The licensing requirement for building contractors serves this goal by providing oversight and enforcement of safety regulations. There is also a rational basis for the resident homeowner exemption to the licensing requirement. A homeowner making improvements to his or her own home will be sufficiently motivated to make good quality repairs and improvements because the homeowner will live with the consequences of poor craftsmanship. It is certainly

plausible that the Hammond ordinances requiring contractor licenses, but exempting resident homeowners, serves the governmental interests that the City identified.

        B.        *Equal Protection Clause*

Plaintiffs also argue that the Hammond ordinances violate the Equal Protection Clause of the Fourteenth Amendment. (DE # 40 at 23.) They argue that the City of Hammond does not have a rational basis for treating residents differently than out-of-state citizens. As discussed above, the ordinances do not distinguish based on location, but on classification. Moreover, as discussed above, the ordinances survive rational basis review.

None of the cases plaintiffs cite compel a different conclusion. In each of the cases plaintiffs cite, the law at issue violated the Equal Protection Clause because it impermissibly favored in-state residents over out-of-state residents. *See Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985) (Alabama law taxed out-of-state insurance companies at a substantially higher rate than domestic insurance companies); *Zobel v. Williams*, 457 U.S. 55 (1982) (Alaska dividend program provided dividends based on each resident's length of residency within the state); *WHYY, Inc. v. Borough of Glassboro*, 393 U.S. 117 (1968) (New Jersey law denied tax exemption to non-profit corporation owning property within the state because the corporation was not incorporated in New Jersey). These cases are distinguishable for the reasons already articulated throughout this opinion. The Hammond ordinances do not favor residents over non-residents and therefore do not violate the Equal Protection Clause.

17

C. *Motion to Strike*

One final matter remains before this court. Plaintiffs have filed a motion to strike the declaration of Kurtis Koch, attached to defendant's motion for summary judgment, on the basis that it is "untimely, speculative, contrary to prior deposition testimony, contrary to prior answers to interrogatories, and contradicts [his] repeated admissions that he lacks personal knowledge of the subjects therein." (DE # 54 at 1.)

Motions to strike are usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp. 2d 690, 695 (N.D. Ind. 2009). That is not the case here. None of the evidence at issue was considered in the resolution of the parties' motions for summary judgment. Accordingly, the motion will be denied as moot.

## IV. CONCLUSION

For these reasons, the court **DENIES** plaintiffs' motion for summary judgment (DE # 39), **GRANTS** defendant's motion for summary judgment (DE # 46), **DENIES** plaintiffs' motion to strike (DE # 54). The Clerk is **DIRECTED TO ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendant City of Hammond, Indiana, and against plaintiffs Christopher Regan and Northwest Indiana Creative Investors Association, Inc., who shall take nothing by way of their complaint.

**SO ORDERED.**

Date: July 25, 2018

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT